22 - 1 4 3 5

CARL A. WESCOTT
8210 E. VIA DE LA ESCUELA
SCOTTSDALE AZ 85258
CARLWSOJ@GMAIL.COM
*IN PROPRIA PERSONA*
+1 936 937 2688

# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| CARL A. WESCOTT, | Civil Action No. |
|---|---|
| Plaintiff, | **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;** |
| vs. | |
| SUMMERBIO, LLC | |
| Defendants. | |
| + DOES 1 through 10 | |

## VERIFIED COMPLAINT

Plaintiff Carl A. Wescott, proceeding *pro se*, complains of Defendant Summerbio, LLC. In support of his complaint, the Plaintiff alleges as follows:

## PARTIES

1. The Plaintiff is an individual who resides in Scottsdale Arizona. However, he got a COVID-19 PCR test that Summerbio, LLC provided the test result for while in California.

2. Defendant Summerbio, LLC ("Summerbio") is a Delaware LLC, number 7987902, formed on May 26th, 2020. Summerbio LLC has a California branch as well, where the branch has been registered since June 2020, as company number 202016110623, since Summerbio LLC has

operations in California. Summerbio is a venture-capital-funded medical laboratory, the largest

COVID-19 test provider in the nation, capable of conducting 120,000 tests per day and doubling

capacity at present. Summerbio's marketing points to international travel as a key use case for

its COVID-19 test and results. Summerbio provided the test result that, contrary to its

advertising, did not conform to international standards, thus breaching its warranty of fitness for

the international travel use case.

## JURISDICTION AND VENUE

3. This is an action for damages with a federal law issue, as to whether the Defendant violated

the Truth in Advertising Act of 2016.

## CHOICE OF LAW

The Plaintiff's trip originated in California. His COVID-19 test nasal swab was taken in San

Francisco, California. Summerbio's testing facility that provided the incorrectly formatted test

result is based in Menlo Park, California. The Plaintiff is filing suit in Delaware as Summerbio is a

citizen of Delaware. However, other than the federal law issues related to the Magnuson-Moss

Warranty Act and any interstate airline law, the Plaintiff respectfully requests that California law be

applied to adjudication of the state law issues brought up hereat.

## CASE SUMMARY

This case concerns a rejection/bumping that the Plaintiff experienced from United Airlines

and its operating partner Lufthansa due the unsuitability of Summerbio's COVID-19 PCR test

results, and Summerbio's related deceptive acts including fraudulent advertising and marketing

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF
CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED
IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.;
VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

2

practives. In the incident, the Plaintiff was traveling to Dubai from San Francisco via Frankfurt in late July 2021. The Plaintiff had a COVID-19 PCR test sample taken at Downtown Medical Group within the required timeframe that Dubai requires (72 hours), with a negative result. Downtown Medical Group outsources its COVID-19 PCR tests to Summerbio, like many California medical providers, and thus Summerbio processed the Plaintiff's nasal swab sample and provided the COVID-19 PCR test result. The COVID-19 test result provided by Summerbio had the date of the test (July 22nd) but no timestamp.

The Plaintiff flew from San Francisco to Frankfurt on July 24th, 2021, arriving in Frankfurt on July 25th, 2021. However, in Frankfurt, a Lufthansa representative denied the Plaintiff boarding his flight in Frankfurt to Dubai, based on not being able to count the number of hours from the test on July 22nd to the Lufthansa flight boarding time of 2:40 pm on July 25th. (*Nota bene* the time difference of ten (10) hours, making the test being done within 62.5 hours).

Thus, the Plaintiff was in compliance from a COVID-19 PCR test standpoint, but due to the Summerbio test result not being as advertised for this use case, and not meeting its implied warranty of fitness for that purpose, the Plaintiff was denied boarding the flight to Dubai. Summerbio's marketing highlights the international travel use case as one of the key uses for its COVID-19 PCR testing and results. The Plaintiff believes that Summerbio is guilty of false advertising in this regard, as well as a breach of its warranty of fitness for international travel.

As a result of the ejection and rejection, the Plaintiff sustained significant cash damages in the form of extra expenses and much greater damages in terms of business interruption, humiliation,

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

3

1   wasted time and emotional distress.

## ALLEGATIONS OF CONSPIRACY

1. Upon information and belief, there are individual Defendants currently unknown to Plaintiff, who shall emerge with the benefit of legal discovery.

2. Plaintiff is informed and believes and thereon alleges that at all times material to this complaint, those individuals, in addition to acting for themselves individually, as well as for the benefit of their respective marital community (if any per individual case), are and were acting as the agents, servants, employees, and/or representatives of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

3. Plaintiff further alleges on information and belief that the acts and non-acts of each of the individual Defendants were fully ratified by each and all the Defendants.

4. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific individual Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

5. In addition, upon information and belief, beyond Summerbio, there are even more corporate, trust, and other entity type Defendants currently unknown to Plaintiff, that shall emerge with the benefit of legal discovery.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

6. Plaintiff is informed and believes and thereon alleges that at times material to this Complaint, those corporate defendants, in addition to acting for themselves and for their own behalf, were acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

7. Plaintiff further alleges on information and belief that the acts and non-acts of each of the entity Defendants were fully ratified by each and all the Defendants.

8. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific entity Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

## NARRATIVE AND SUMMARY OF FACTS

9. On July 24, the Plaintiff had booked flights from San Francisco to Frankfurt (on United) and then from Frankfurt to Dubai on United's partner Lufthansa ("the Second Flight").

10. Prior to boarding his first flight, the Plaintiff, consistent with regulations, obtained a Covid-19 test from Downtown Medical Center with test result provided by Summerbio, that showed that the Plaintiff tested negative for Covid-19.

11. The Plaintiff's appointment at Downtown Medical Group was on Thursday, July 22nd, at 2:10 pm Pacific time (Exhibit B).

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

12. Falling below the professional standard of care for the international travel use case it advertises as a use case for its test results, Summerbio failed to time-stamp the Plaintiff's Covid test, as further summarized in Exhibit C, Letter to Downtown Medical Center.

13. When the Plaintiff went to board his connecting flight from Frankfurt to Dubai, however, the Lufthansa manager at the gate would not let the Plaintiff board the flight, because, per the manager, the Summerbio test did not meet international standards (as it lacked a timestamp, so the Lufthansa manager could not calculate the hours).

14. The number of hours between the 2:15 pm test on 7/22/2022 and the Plaintiff's second departing flight at 2:40 pm German time on 7/25 (4:40 am Pacific time on 7/25/2022) was under 62.5 hours – but without a timestamp, the Plaintiff could not show he conformed and was in compliance with Dubai's entry requirements.

15. The Plaintiff was deeply humiliated by his public ejection from the flight as it conveyed to the other passengers that he had engaged in misconduct, placing the Plaintiff in a false light.

16. The Plaintiff's distress was aggravated by Lufthansa when a Lufthansa employee threatened to have him arrested if he threatened to sue Lufthansa.

17. The Plaintiff was confronted with the possibility of false imprisonment in a foreign jail which fell far short of Lufthansa's vaunted customer service standards.  (Exhibit D has more details over the Lufthansa bumping).

18. Lufthansa failed and refused to compensate the Plaintiff for the bumping part of his issues and causes of action, pursuant to 14 CFR 250.5 (a)(3).  In contacting Lufthansa, Lufthansa

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

representatives, including Lufthansa attorneys, pointed to Summerbio's test result as not meeting international standards, and thus, per Lufthansa attorneys, the Plaintiff violated Lufthansa's Contract with Conditions of Carriage, and also was in violation of international law.

19. Indeed, both United and Lufthansa attorneys claim that they had to remove and eject the Plaintiff as a matter of United States federal law as well as international law.

20. The Plaintiff was forced to travel back to San Francisco, spent money on hotels and Ubers and another COVID-19 test, and another roundtrip ticket – US $2810.

21. The Plaintiff was also separated from his luggage for a few weeks, necessitating a number of purchases over $400 (now we have a cash outlay of over $3210 caused by the non-conforming and inadequate Summerbio test).

22. Beyond the false light humiliation and the Plaintiff's distress over these occurrences, and the cash invested by the Plaintiff in the extra expenses, the biggest impact to the Plaintiff was the needless waste of days of his time, and the corresponding business interruption.

23. The Plaintiff was traveling on a United air ticket. The Plaintiff gets amazing service from United 99% of the time and has been extremely happy with United Airlines as a method of transport, and how he is treated most of the time.

24. United Airlines' marketing slogan is that we are "Flying the friendly skies." Indeed, they are friendly most of the time, but were not on these days, not for the Plaintiff, due to his non-confirming Summerbio test.

25. Rejections, ejections, and bumpings have gotten the public's attention recently, including with a

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

United Airlines incident where a Chinese man was forcibly ejected from a Chicago flight he was bumped from. Hundreds of millions of people have watched the video of him getting dragged off the plane and beaten up, with his nose bloodied in the process.

26. Laws and procedures have changed to protect and compensate consumers who experience bumpings, ejections and rejections.

27. Luckily, the Plaintiff was not physically assaulted by the flight attendant on the First Flight, by the United Representative, or the Lufthansa manager.

28. However, the Plaintiff was emotionally assaulted by these incidents, verbally assaulted, threatened with jail, and publicly humiliated.

29. The Plaintiff's emotional distress was severe – he might rather have been dragged off the plane with a bloodied nose rather than face what he endured. Recovering from the emotional distress and assaults took about a week after reaching his destination, causing the Plaintiff to suffer and lose an additional week of what would otherwise have been experiences with his family and work productivity, beyond the wasted time and the business interruption experienced as a result of the Summerbio test not meeting its implied warranty of fitness for international travel.

### Plaintiff's belief that Summerbio is liable for the Bumping/Ejection

30. Summerbio's advertising, marketing, and press releases on Summerbio's COVID-19 tests subjects Summerbio to liability for its consumer fraud in advertising and marketing.

31. More specifically, Summerbio is in violation of California's False Advertising Law (FAL) (Business and Professions Code §§17500, et seq.).

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF
CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED
IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.;
VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

32. (The Plaintiff is suing in Delaware but asks that California law be applied to the state law Issues. His ticket was purchased from United Airlines, headquartered in Chicago, Illinois, so the Plaintiff also quotes Illinois law from time to time, which is substantively similar to California law on these issues both statutorily and with settled law.

33. The ICFA makes it illegal for a defendant to engage in any deceptive or unfair act or practice in the course of commerce. 815 ILCS 505/2; *Totz v. Continental Du Page Acura*, 236 Ill. App. 3d 891, 900 (2d Dist. 1992).

34. The ICFA provides consumers with broader protection than the common law and makes it easier for the victims of unfair or deceptive conduct to recover. *Id.* at 901.

35. The ICFA is to be "liberally construed" which "provides a clear mandate to Illinois courts to utilize the [ICFA] to the greatest extent possible to eliminate all forms of deceptive or unfair business practices and provide appropriate relief to consumers." *Id.*

36. To achieve its purpose, the ICFA removes many of the barriers to recovery by reducing the elements of a *prima facie* case and lowering the standard of proof. *Buechin v. Ogden Chrysler-Plymouth, Inc.*, 159 Ill. App. 3d 237, 250 (2d Dist. 1987) ("The majority of the traditional common law elements have been virtually eliminated by the [Act].").

37. Summerbio's Covid-19 PCR certification ("the Certification") is a also a consumer good because it is "movable" within the definition of UCC (Uniform Commercial Code) 2-105. See *Gross v. Symantec Corp.*, No. C12-000154 CRB (N.D. Cal. 2012); Illinois has similar settled law (software is also a "good" under the UCC).

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

38. As a matter of California law, Summerbio's PCR test results violated the warranty of fitness for a particular purpose. See, California Civil Code 1791, et seq, (Song-Beverly Consumer Warranty Act) and CACI 1232.

39. The equivalent Illinois statutes are 810 ILCS 5/2-315: Implied warranty: fitness for particular purpose. Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose. *810 ILCS 5/2-315*, Laws 1961, p. 2101, current through Public Act 102-696

40. In short, Summerbio advertising is partially geared toward consumers who are embarking on international travel.

41. As a matter of California and Illinois law, Summerbio warrants that its test result (Certification) is fit for that purpose.

42. Summerbio breached its warranty of fitness by failing to conform to international standards and providing a timestamp.

43. Song Beverly provides for the imposition of consequential damages, see sections 2714-2715.

44. The consumer fraud count provides potential exemplary damages.

45. In order to right the scales of justice, the Plaintiff has had to file this legal complaint. The Plaintiff is suing in part to vindicate the rights of obedient and orderly frequent flyers like himself who are in compliance with international travel requirements, but are victims of

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

companies like Summerbio, LLC.

---

## **DEMAND FOR JURY TRIAL**

---

46. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

47. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

---

**FIRST CAUSE OF ACTION**
(Violations of California's False Advertising Law,
Cal. Bus. & Prof. Code § 17500, et seq.)

48. The Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

49. Cal. Bus. & Prof. Code § 17500 provides: It is unlawful for any…corporation…with intent…to dispose of…personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated…from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

11

proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading..."

50. Beginning at an exact date unknown to Plaintiffs, but within twenty (24) months preceding the filing of this Legal Complaint, Defendant has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of its COVID-19 PCR tests.

51. The Plaintiff relied to his detriment on Defendant's false, misleading and deceptive advertising and marketing practices.

52. Had Plaintiff been adequately informed and not intentionally deceived by Defendant, he would have acted differently by arranging a COVID-19 PCR test from another provider and test results provider.

53. Defendant's acts and omissions are likely to deceive the general public.

54. Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits.

55. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, et seq. of the California Business and Professions Code.

56. The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

57. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein.

58. The acts complained of herein occurred, at least in part, within twenty (20) months preceding the filing of this Legal Complaint.

59. The Plaintiff is entitled to and does seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future.

60. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same.

61. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled.

62. The Plaintiff has no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

63. If the Plaintiff was an attorney, he would be seeking redress on behalf of other victims of Defendant.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

13

64. The Plaintiff is not an attorney and cannot represent anyone but himself, but he hopes that this Court will consider the tens of thousands of consumers who get Summerbio tests each day in considering the appropriate injunctive relief to protect the general public.

65. As a direct and proximate result of such actions, Plaintiff has suffered, injury in fact and has lost money and time, been inconvenienced, has had his business interrupted, and has suffered other consequences as a result of such false, deceptive and misleading advertising concerning Summerbio's COVID-19 PCR tests and their results.

66. The Plaintiff's allegations and damages shall be fully proven at jury trial.

## SECOND CAUSE OF ACTION
(Violations of the Truth in Advertising Act of 2016)

67. The Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

68. Beginning at an exact date unknown to Plaintiffs, but within twenty (24) months preceding the filing of this Legal Complaint, Defendant has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of its COVID-19 PCR tests.

69. The Plaintiff relied to his detriment on Defendant's false, misleading and deceptive advertising and marketing practices.

70. Had Plaintiff been adequately informed and not intentionally deceived by Defendant, he would have acted differently by arranging a COVID-19 PCR test from another provider and test results provider.

71. Defendant's acts and omissions are likely to deceive the general public.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**
14

72. Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits.

73. Accordingly, Defendant has engaged in false advertising, as defined in the Truth in Advertising Act of 2016.

74. The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

75. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein.

76. The acts complained of herein occurred, at least in part, within twenty (24) months preceding the filing of this Legal Complaint.

77. The Plaintiff is entitled to and does seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining Defendant from engaging in any such advertising and marketing practices in the future.

78. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of United States of America, unless specifically ordered to comply with the same.

79. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant is not entitled.

80. The Plaintiff has no other adequate remedy at law to ensure future compliance with the Truth in Advertising Act of 2016 alleged to have been violated herein.

81. If the Plaintiff was an attorney, he would be seeking redress on behalf of other victims of Defendant.

82. The Plaintiff is not an attorney and cannot represent anyone but himself, but he hopes that this Court will consider the tens of thousands of consumers who get Summerbio tests each day in considering the appropriate injunctive relief to protect the general public.

83. As a direct and proximate result of such actions, Plaintiff has suffered, injury in fact and has lost money and time, been inconvenienced, has had his business interrupted, and has suffered other consequences as a result of such false, deceptive and misleading advertising concerning Summerbio's COVID-19 PCR tests and their results.

84. The Plaintiff's allegations and damages shall be fully proven at jury trial.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

**PRAYER FOR RELIEF**

85. Wherefore, Plaintiff, on behalf of himself, requests that this Court award relief against Summerbio as follows:

a. Awarding Plaintiff damages;

b. Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Summerbio from continuing the unlawful practices as set forth herein.

c. Awarding the Plaintiff's fees and costs;

d. For such other and further relief as the Court may deem necessary or appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby repeats his demands for a jury trial for all of the claims so triable.

RESPECTFULLY SUBMITTED on October 29th, 2022

_____

Carl A. Wescott, *pro se*

---

**VERIFICATION**

I, Carl A. Wescott, under penalties provided by law in Delaware, as well as the federal laws of the United States of America, certify under penalty of perjury that the facts set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____

Carl A. Wescott

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S FALSE ADVERTISING ACT (FAL) AS FURTHER ENCAPSULATED IN CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17500, ET. SEQ.; VIOLATIONS OF THE TRUTH IN ADVERTISING ACT OF 2016;**

17



## Appointment Summary



Your order # is **489393**.

Date & Time
**Thursday, Jul 22, 2021**
**02:10 PM**

Your test is at the following address:

**Downtown Medical Group**
**490 Post Street  Suite #900**
**San Francisco, CA,  94102**

Please bring your phone with you to the testing station.

If you need to change your scheduled time or cancel you appointment,
please use the links below:

× Cancel

Click here for directions to your testing location:

December 4th, 2021

Downtown Medical Group
490 Post St Suite 900
San Francisco, CA 94102

EXHIBIT C

Re: damages caused by COVID-19 PCR test results not meeting intl. standards

Dear Sir or Madam:

The purpose of this communication is to assert a claim for damages arising out of a breach of contract and a breach of warranty of fitness for a particular purpose, in breach of the Song-Beverly Consumer Warranty Act, California Civil Code 1791, et seq., and the Illinois equivalent.

1. Underlying Facts

I paid Downtown Medical Group for a COVID-19 PCR test on July 22nd, 2021, for international travel to Dubai. You were expressly informed of my purpose in seeking the test. Dubai requires a negative COVID-19 PCR test for entry, with the sample taken no more than 72 hours prior to departure.

I obtained a negative test result but there was no time stamp, just a date.

This was deemed acceptable by United for the first leg of my trip, San Francisco to Frankfurt. However, in traveling from Frankfurt to Dubai, I was rejected due to my non-conforming PCR test results, which didn't have a timestamp. Without the timestamp, uit was not possible to calculate that I was under the 72 hours since my PCR test sample was taken.

As a result of your failure to conform to international standards, I had to fly back to San Francisco, get another COVID-19 test, and spend thousands of dollars more on a second roundtrip plane ticket, multiple more nights of hotel, ground transportation, and other costs. I was separated from my luggage for a significant amount of time, resulting in further costs and significant inconvenience. I suffered the consequences of business interruption for days, as my attorney will prove in court if necessary, with significant financial consequences.

Downtown Medical Group is liable for my direct and consequential damages.

1

## 2. Legal Principles

I entered into a simple contract with Downtown Medical Group and paid Downtown Medical Group to provide a COVID-19 PCR test that (at least impliedly-in-fact) would meet international standards. It did not. Your breach of contract provides consequential damages.

Your advertising COVID-19 tests on the web and elsewhere, given the circumstances, subjects you to liability for your consumer fraud in advertising and marketing. More specifically, you are in violation of California's False Advertising Law (FAL) (Business and Professions Code §§17500, et seq.), and the Illinois equivalent.

Your Covid-19 PCR certification ("the Certification") is a also a consumer good because it is "movable" within the definition of UCC (Uniform Commercial Code) 2-105. See *Gross v. Symantec Corp.*, No. C12-000154 CRB (N.D. Cal. 2012) (software is also a "good" under the UCC).

As a matter of California and Illinois law, your PCR test and the format of its results violated the warranty of fitness for a particular purpose. See, California Civil Code 1791, et seq, (Song-Beverly Consumer Warranty Act) and CACI 1232.

In short, your professionals were aware of the purpose of the test in my case and, indeed, your advertising is geared toward consumers who are embarking on international travel. As a matter of California and Illinois law, you warrant that your Certification is fit for that purpose. Downtown Medical Group breached its warranty by failing to conform to international standards and providing a timestamp.

Please note that Song Beverly also provides for the imposition of consequential damages, see sections 2714-2715. The breach of contract cause of action also provides for consequential damages, in both states I am considering filing in (Illinois, where your two co-defendants are headquartered, and California). This would include the value of my time and business opportunity costs during my unplanned multi-day hiatus flying all the way back to San Francisco and getting a new COVID-19 test that complied so I could get to and into Dubai, my original planned destination.

The consumer fraud count gives me exemplary (or punitive) damages.

I am aware that the PREP Act, 42 § 247d–6d, confers certain immunities in relation to errors in lab work that could signify a false positive or false negative in a test. I am not complaining about a false positive or false negative. I am complaining about the failure of your certification to conform to international standards. Besides my other claims in contract and tort, this is a false claims advertising and consumer fraud case.

I do not believe that the PREP Act was intended to license laboratories to engage in consumer fraud.

Alternatively and conjunctively, the failure to provide a time stamp would represent a willful and wanton departure from standards, taking the case out of PREP Act immunity.

3. Conclusion

Downtown Medical Group was expressly aware that I was embarking on an international trip and that I was seeking your testing and certification for that express purpose. The Downtown Medical Group web site encouraged and invited international travelers to utilize your testing and laboratory facilities for that purpose.

I contracted with Downtown Medical Group in reliance on your skill, judgment and professional experience in providing a certification that would comply with international standards. Downtown Medical Group failed to comply by not providing a time stamp which is an elementary requirement.

Despite my payment and full performance on my side, Downtown Medical Group breached the contract with me to (impliedly-in-fact) provide test results in a format that met the standards needed for international travel.

Your web site constituted false advertising to me as an Arizona and California consumer and in violation of consumer fraud statutes.

As a direct and foreseeable result of your breach of contract, noncompliance and breach of warranty, I have sustained direct and consequential damages both of which are compensable under the relevant statutes and the common law of both California and Illinois.

My damages include having to purchase a second roundtrip ticket to Dubai from San Francisco, extra nights of hotel, Ubers, another COVID-19 PCR test, replacement of necessities when separated from my luggage, and business interruption/the loss of multiple days of professional revenue. This does not include emotional distress and the humiliation of being rejected and prevented from getting to my Dubai destination.

Downtown Medical Group's liability is clear. I do not believe that statutory immunity may be invoked for this type of error which is clerical/administrative rather than scientific.

Including my extra out-of-pocket costs, lost time, and business interruption/lost revenues, my base damages are greater than US $10,000.

3

The attorneys I am talking to assure me that I will get an award at jury trial of many times that, given the expected punitive damages and other add-ons, as well as full reimbursement for my legal costs.

I do hope you'll fix this issue so that your other customers don't have to experience the extra costs and frustration that I experienced.

Thank you.

Carl A. Wescott
8210 E. via de la Escuela
Scottsdale, AZ 85258
+1 936 937 2688
CarlWescott2020@gmail.com

4

October 20ᵗʰ, 2021

*EXHIBIT D*

Lufthansa
P. O. Box 66143
Chicago, IL 60666
Customer.relations@lufthansa.com;
Detlef.kayser@dlh.de

Re: Involuntary Deboarding: Compensation Due

Dear Sir and Madam:

The purpose of this letter is to submit a claim, pursuant to 14 CFR 250.5(a)(3) for involuntary deboarding in connection with my Lufthansa flight from Frankfurt to Dubai, scheduled on July 25ᵗʰ, 2021.

I would also simultaneously like to register a complaint about Lufthansa customer service (from one individual) which was (most uncharacteristically) aggressively antagonistic.

By way of context, I'm a United/Star Alliance frequent flier, Premier 1k on United, 2 million miles and very happy with United Airlines. I see no reason that I won't hit 3 million and then 4 million miles in the upcoming decade+, even while flying other airlines.

I love SwissAir, United's partner in the StarAlliance as well, and have a very strong like for Lufthansa and trust in its operations. I appreciate the hospitality, too, at the Lufthansa lounges in Frankfurt and other airports.

I'm not at all a demanding passenger, usually engrossed in reading or movies, or asleep on flights. I'm on quite friendly terms with many of the flight attendants and operations staff whom I see frequently.

Now, here are the facts:

As I was flying from San Francisco to Dubai (via Frankfurt) on United/Lufthansa, I obtained a Covid-19 test from Downtown Medical Group in San Francisco to comply with regulatory requirements, on the afternoon of July 22ⁿᵈ, 2021. I had an appointment at 2:10 pm that day (July 22ⁿᵈ, 2021).

The test was taken within 48 hours of my 2:05 pm United flight from SFO to FRA on July 24ᵗʰ, 2021 (72 hours is the requirement, so I had an extra day of buffer). I will admit that my test did not have a timestamp, merely a date, but that would only have been relevant if I had taken the test three (3) days before my Lufthansa and/or United flight, not two (2). Dubai requires a negative PCR test for COVID-19 taken within 72 hours of departure. I understand

1

that the airlines enforce these rules for various countries, which is not easy, and also carries potential liability.

United Airlines exercised its discretion to fly me to Frankfurt based on the date of the test. The man in charge at the boarding gate in Lufthansa (tall, dark hair, glasses) denied me boarding. He would not allow me to show him my appointment time, call the test provider, or show him evidence of the time of the test from secondary sources (my cell phone). Since I had a valid and conforming (PCR) COVID-19 test there was no reason to have me involuntarily disboarded from the flight.

I ended up flying back to the US, getting another COVID-19 test, buying a new set of roundtrip flights to travel again a couple days later (as you can see from my travel records I cut and pasted from my United account, below).

At the point when I was being disboarded involuntarily, the man in charge would not give me his name. He would not give me information on his boss or superior. I wanted to try to reason with someone and get approval to travel.

I informed the gentleman I was going to take a picture of him for identification purposes. He told me that that was illegal in Germany, so I didn't take the picture.

I then told him that this was an unfortunate situation, that it would cost me thousands of dollars and days of my time, and that I would have to submit a claim or possibly a lawsuit if I was not paid reasonable compensation, the gentleman at the gate that refused to name himself then said:

"Then the police will come and find you and you will be arrested."

I was being ejected from a flight despite possessing an indisputably valid COVID-19 PCR test that lacked only a time stamp (indisputably valid as it was taken under 2 days or 48 hours before my flight) and threatened with imprisonment in a foreign jail for registering a civil complaint.

Because I've had many years of good experience flying with Lufthansa, I'm going to regard this incident as an outlier, an issue caused by one employee that may have been having a bad day. I will point out that in the lawsuit-happy USA, it is regarded as criminally extortionate to attempt to use threats of arrest to obtain a desired result in a civil matter.

But let's ignore all that, again, as an outlier and not reflective of Lufthansa's views, policies, nor procedures.

I was going to ask for reasonable compensation, and if that was denied, would have been forced to file a lawsuit to recover the damages caused to me, which include many thousands of dollars in extra expenses, days of my time wasted, and more in terms of consequential and secondary effects.

2

I have since learned that the FAA pre-empts common law remedies, much to the benefit of Lufthansa. Reviewing 14 CFR 250.5, Lufthansa did not arrange alternate transportation. Under the circumstances, I am unambiguously entitled to $1,550.00 in compensation under subsection (b)(3). The formula is clear and clearly applicable to my case.

That's way less than the damages to me, but if Lufthansa would kindly send me a check for US $1550, then we can both move on. I do appreciate the simplicity of this approach.

I am still a very happy United customer and I expect to have many more years of good experiences with Lufthansa, too.

Sincerely,

Carl A. Wescott
8210 E. via de la Escuela
Scottsdale, AZ 85258
+1 936 937 2688
carlwsol@gmail.com





PRESS FIRMLY TO SEAL

U.S. POSTAGE PAID
PM
SCOTTSDALE, AZ
85258
OCT 29, 22
AMOUNT
**$0.95**
R2305H126685-16

1004    19801

CASTILLO DE SAN MARCOS

# UNITED STATES POSTAL SERVICE ®

# PRIORITY® MAIL

- Expected delivery date specified for domestic use.
- Most domestic shipments include up to $50 of insurance (restrictions apply).*
- USPS Tracking® included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

**FLAT RAT**
ONE RATE ■ ANY

EXPECTED DELIVERY DAY:  11/01/22

USPS TRACKING® #

**TRACKED**

9505 5131 7472 2302 8036 92

ge Pickup,
scan the QR code.

PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

**FROM:**

CARL A. WESCott
8210 E. Via de la
escuela
Scottdale AZ 85258

**TO:**

Clerk of Court
USDC
District of Delaware
844 N. King Street
4th floor, Room 4209
Wilmington, DE 19801

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.

 **UNITED STATES POSTAL SERVICE** ® | **PRIORITY**® **MAIL**

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

# TRACKED ■ INSURED



PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

## VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

For Domestic shipments, the maximum weight is 70 lbs. For international shipments, the maximum weight is 20 lbs.